***E-FILED:  4/11/2007***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSE BRIBIESCA, | Case No. C05-03040 HRL |
| Plaintiff, | **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JO ANNE BARNHART, Commissioner of Social Security, | |
| Defendant. | [Re: Docket Nos. 13, 16] |

In this Social Security action, plaintiff Jose Bribiesca ("plaintiff") appeals a final decision by the Commissioner ("defendant")[1] denying his application for Supplemental Security Income. Presently before this court is plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff filed a reply brief, and the matter was submitted without oral argument. Upon consideration of the papers filed by the parties, and for the reasons set forth below, plaintiff's motion for summary judgment is granted in part and denied in part, defendant's cross-motion for summary judgment is granted in part and denied in part, and the case is remanded for reconsideration consistent with this opinion.[2]

---

[1] At the time the instant action was filed, Jo Anne Barnhart was the Commissioner of Social Security. Michael Astrue has recently been sworn in as the new Commissioner.

[2] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

**I.  BACKGROUND**

Plaintiff was born in 1957 and was 47 years old at the time the Administrative Law Judge ("ALJ") rendered the decision under consideration here.  He is primarily a Spanish speaker with a limited education and a claimed inability to communicate in English.  His past work history includes work as a field laborer, work in a cannery and work as a mechanic.

In or around September 2001, he filed an application for supplemental security income, claiming disability since 1995 due to a stroke with residual weakness and seizure disorder.[3]  The application was denied initially and upon reconsideration, and plaintiff requested a hearing before an ALJ.  On November 27, 2002, ALJ Everstine issued an unfavorable decision.  The Appeals Council subsequently vacated that decision and remanded the matter because the hearing tape was partially inaudible.  (AR 60-67, 69).

On remand, a hearing was held before ALJ McCormick on March 10, 2004.  In a decision dated August 16, 2004, he concluded that plaintiff was not disabled under the Social Security Act.  He found that plaintiff suffers from "a seizure disorder and is status post right parietal hemorrhage with left sided spastic hemiparesis" (AR 32), and that these were "severe" impairments.  However, he concluded that plaintiff did not have an impairment listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  The ALJ further found that plaintiff has the residual functional capacity ("RFC") to perform a wide range of light work, and that his impairments do not prevent him from performing a significant number of existing jobs in the local and national economy.  (AR 26-33).

On May 27, 2005, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of that decision.

---

[3]    The instant motions concern only plaintiff's 2001 application for benefits. Plaintiff evidently filed applications for supplemental security income in 1998 and 1999. Both applications were denied and became final after plaintiff did not pursue administrative remedies.  None of plaintiff's prior applications were re-opened.  (AR 26-27).

2

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III. DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly rejecting the opinions of plaintiff's treating and examining physicians; (2) making findings on exertional RFC which were not supported by substantial evidence; (3) improperly discounting plaintiff's symptom-reporting; (4) improperly using the medical-vocational guidelines; and (5) making unsupported findings as to the severity of plaintiff's mental condition. Defendant asserts that the ALJ's decision is supported by substantial evidence in the record and is free of legal error.

**A.     Physicians' Opinions and Exertional RFC Findings**

Plaintiff argues that the ALJ erred in rejecting the opinions of treating physician Michelle Violich, M.D. and examining physician Hideki Garren, M.D. He contends that both doctors opined that he had an RFC less than the exertional requirements for light work. Dr. Violich, in particular, concluded that plaintiff is permanently disabled. (AR 396). Relatedly,

3

1  plaintiff contends that there is no substantial evidence in the record supporting the ALJ's
2  conclusion that he retains the RFC to perform a "wide range of light exertional work." (AR 31).
3  The opinion of a treating physician is given deference. *Magallanes v. Bowen*, 881 F.2d
4  747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily
5  conclusive as to either a physical condition or the ultimate issue of disability." *Id.* An ALJ is
6  free to reject a treating physician's opinion, even if it is not contradicted. "To reject the
7  uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing
8  reasons for doing so." *Id.* Where the treating physician's opinion is controverted, "the ALJ
9  may reject the opinion of a treating physician in favor of a conflicting opinion of an examining
10 physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that
11 are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th
12 Cir. 2002) (quoting *Magallanes*, 881 F.2d at 751). "The ALJ can 'meet this burden by setting
13 out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
14 interpretation thereof, and making findings." *Id.* "'The ALJ need not accept the opinion of any
15 physician, including a treating physician, if that opinion is brief, conclusory, and inadequately
16 supported by clinical findings.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)
17 (quoting *Thomas,* 278 F.3d at 957)).

18      **1.     Rejection of Dr. Violich's April 2002 Assessment**

19      In April 2002, Dr. Violich concluded that plaintiff was permanently disabled. (AR 396).
20 Approximately six months later, on August 11, 2002, she filled out a Stroke Residual
21 Functional Capacity form. (AR 437-40). In his written decision, the ALJ considered and
22 provided a detailed summary of both reports, but rejected Dr. Violich's April 2002 assessment.
23 (AR 28-29). Plaintiff contends that the ALJ did not provide sufficiently specific reasons to
24 justify his rejection of her opinion.

25      An ALJ must provide more than conclusory assertions to justify his rejection of medical
26 opinions. "To say that medical opinions are not supported by sufficient objective findings or
27 are contrary to the preponderant conclusions mandated by the objective findings does not
28 achieve the level of specificity our prior cases have required, even when the objective factors

4

1  are listed seriatim." *Regennitter v. Comm'r of the Soc. Security Admin.*, 166 F.3d 1294, 1299
2  (9th Cir. 1999) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  "The ALJ
3  must do more than offer his own conclusions.  He must set forth his own interpretations and
4  explain why they, rather than the doctors', are correct." *Id*.

5  In discrediting Dr. Violich's April 2002 opinion, the ALJ stated:

> The undersigned gives minimal weight to Dr. Violich's April 2002 assessments.  First, the determination of disability is a conclusion reserved for the Commissioner.  Second, these assessments are simply not supported by the objective medical evidence.  Dr. Violich's records are devoid of any tests, i.e., x-rays, MRI scans which would support his [sic] opinion.  Dr. Violich's opinion is not consistent with his [sic] own findings or other substantial evidence of record including the objective findings and observations, notes and opinions of other treating and examining physicians.  As such, Dr. Violich's opinion is not supported by the overall evidence of the record, it is not afforded significant weight in this decisionmaking process in accordance with SSR 96-5P.

12  (AR 29).  This court agrees that some of the ALJ's asserted reasons, while facially appropriate,
13  are not sufficiently specific.  The ALJ did not identify which other physicians' opinions he
14  believed were inconsistent with Dr. Violich's opinion.  Nor did he specify which of Dr.
15  Violich's findings he found to be inconsistent with her conclusion that plaintiff was
16  permanently disabled.

17  Nevertheless, in the very next paragraph of his written decision, the ALJ goes on to
18  identify specific medical records which he evidently found to be inconsistent with Dr. Violich's
19  April 2002 evaluation.  Here, the ALJ noted that plaintiff's 2002 medical records showed that
20  he had a seizure in 2000 and did not have another seizure until July 2002.  (AR 29, 445, 447,
21  449).  He also correctly observed that medical records dated August 19, 2002 show that plaintiff
22  had a normal gait and that the weakness in his left arm/hand was "mild."  (AR 29, 445).
23  Moreover, insofar as Dr. Violich's April 2002 report was not based upon any objective medical
24  tests, the ALJ was not required to accept her opinion as to disability.  *See Bayliss*, 427 F.3d at
25  1217.

26  Accordingly, this court concludes that in rejecting Dr. Violich's April 2002 assessment,
27  the ALJ provided sufficiently specific reasons which are supported by substantial evidence in

1  the record. Plaintiff's motion as to this issue is denied and defendant's motion on this issue is
2  granted.

### 2. ALJ's Exertional RFC Findings

4  Plaintiff nevertheless maintains that the ALJ failed to properly consider Dr. Violich's
5  August 11, 2002 report, as well as Dr. Garren's 1998 and 2001 reports – specifically, with
6  respect to the number of hours he can stand/walk per day. "[T]he full range of light work
7  requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour
8  workday." (SSR 83-10, 1983 WL 31251 at *6). Moreover, an individual must have the ability
9  to do substantially all of the activities encompassed by light work in order to be considered
10 capable of performing a full or wide range of light work. *See id* at *2. Here, plaintiff argues
11 that the ALJ failed to adequately explain his implicit rejection of these physicians' findings that
12 his ability to stand/walk is limited to up to four hours per day.

13 The ALJ considered and summarized Dr. Violich's assessments as stated in her August
14 11, 2002 Stroke Residual Functional Capacity form. (AR 28-29, 437-440). It appears that, at
15 the hearing, those findings were read as part of a hypothetical posed to the vocational expert
16 (VE). (AR 489-90). The ALJ also considered and provided a detailed summary of Dr. Garren's
17 1998 and 2001 reports in his written decision. (AR 27-28). He apparently credited some of Dr.
18 Garren's 2001 assessments, stating:

19 > Dr. Garren, the consultative examiner, found that the claimant had only
> mild left hemiparesis, left hypesthesia, and hyperrreflexia on the left.
20 > The claimant's sensory examination was intact with diminished sharp
> sensation in his entire left upper and left lower extremity. These findings
21 > are consistent with the limitations found herein.

22 (AR 31).

23 However, the ALJ failed to explain how he assessed an RFC for a wide range of light
24 work when Drs. Violich and Garren both opined that plaintiff is limited to standing or walking
25 for up to four hours per day. (AR 363, 438). Here, the record indicates that the VE identified a
26 clerk/cashier position based on the ALJ's query about an individual who could stand, off and
27 on, for six hours per day. (AR 494).
28

6

It is true, as defendant points out, that the determination of a claimant's RFC is the responsibility of the ALJ.  *See* 20 C.F.R. § 416.946.  Moreover, the ALJ is not obliged to accept the opinions of Drs. Violich and Garren as to the four-hour limit.  However, the basis for the ALJ's apparent rejection of the four-hour limit – and hence, his conclusion that plaintiff remained physically capable of doing the full range of light exertional work, including work as a clerk/cashier in the Spanish community (AR 31) – is not clear.  Accordingly, on this issue, plaintiff's summary judgment motion is granted, and defendant's summary judgment motion is denied.

### B.  Adverse Credibility Determination

Plaintiff contends that the ALJ failed to provide sufficiently specific reasons for discrediting his testimony and statements about his left-side weakness and pain, memory loss, seizures, depression and hearing and vision loss.  Additionally, plaintiff argues that in discounting his subjective complaints, the ALJ failed to consider lay witness testimony – namely, statements made by his friend, Jose Ariaga, in a "Daily Activities Questionnaire (Third Party Information)."  (AR 178-83).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).  "When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." *Id*.  "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Id*.  "Moreover, unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Id*.

7

In the instant case, the ALJ found that plaintiff's impairments "could reasonably be expected to produce some of the pain and other symptoms alleged." (AR 30). Nonetheless, he concluded that "the allegations by the claimant as to the intensity, persistence, and limiting effects of his symptoms were not well supported by the probative evidence and are not wholly credible." (*Id.*). Since there was no finding that plaintiff was malingering, the ALJ was obliged to provide clear and convincing reasons in support of his adverse credibility finding.

Here, the ALJ provided several specific reasons for finding plaintiff's subjective complaints were not wholly credible. He explained that plaintiff's complaints as to the frequency, duration, and severity of his symptoms were not borne out by plaintiff's course of treatment, treatment notes indicating that plaintiff's seizures were controlled with medication, the lack of longitudinal confirmation of a consistently severe mental limitation, and the lack of any mental health referral by plaintiff's treating physicians. (AR 30-31).

Nevertheless, the ALJ did not address Ariaga's lay witness statements contained in the "Daily Activities Questionnaire (Third Party Information)." (AR 178-83). Defendant acknowledges that the ALJ failed to address Ariaga's statement, but contends that any error was harmless. However, an "ALJ is required to account for all lay witness testimony in the discussion of his or her findings." *Robbins*, 466 F.3d at 885 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). "Indeed, 'lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded without comment.'" *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In clarifying the harmless error standard, the Ninth Circuit observed that in each case where the harmless error properly has been applied (a) the ALJ's error was inconsequential (i.e., non-prejudicial to the claimant, irrelevant to the disability determination, or arose during

8

an unnecessary exercise or procedure) and (b) did not involve "silent disregard" of lay evidence. *Stout*, 454 F.3d at 1056. Indeed, *Stout* indicates that the Ninth Circuit, along with several other circuits, "have consistently reversed the Commissioner's decisions for failure to comment on such competent testimony." *Id*. (citing cases).

In the instant case, the court cannot find that the failure to consider lay testimony occurred during an unnecessary exercise or procedure. Nor does the court conclude that the ALJ's failure to consider Ariaga's statement was inconsequential. It is true that Ariaga indicated that he either did not know or did not observe many of plaintiff's daily activities and functions. However, he did provide *some* information corroborating plaintiff's claimed memory problems and other complaints. (AR 178-83). Defendant contends that Ariaga's comments are merely generalized observations which could not possibly change the ALJ's determination. However, because the ALJ did not address Ariaga's statement at all, this court is left with nothing to review to determine whether the error materially impacted his decision. *See Stout*, 454 F.3d at 1056.

Accordingly, as to this issue, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

**C.    Use of the Medical-Vocational Guidelines**

Plaintiff contends that the ALJ failed to consider SSR 83-12 and improperly used the medical-vocational guidelines in determining that he is not disabled. Here, he contends that his exertional capacity is less than that required for light work. He argues that the ALJ erroneously considered only the medical-vocational rule for light work and failed to consider the rule for sedentary work.

The court does not reach this issue because, as discussed above, it agrees that remand is required as to the ALJ's findings on plaintiff's exertional RFC.

**D.    Findings re Non-Severity of Mental Impairments**

Plaintiff argues that the ALJ's finding that he had no consistently severe mental limitations is unsupported by substantial evidence.

9

"An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921; *see also* SSR 85-28, 1985 WL 56856 at *3 ("An impairment or combination of impairments is found 'not severe' when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . ..").

Here, the ALJ noted that plaintiff had been diagnosed with adjustment disorder/dysthymic disorder/depressive disorder. (AR 29). However, he did not find the diagnosis (or the attendant RFC) persuasive because (a) plaintiff did not seek treatment from a mental health specialist; and (b) there was no longitudinal confirmation of consistently severe medical limitations in plaintiff's medical record. (AR 29, 31).

Plaintiff's failure to seek mental health treatment is not, in and of itself, indicative of the severity (or not) of his condition. *See Regennitter*, 166 F.3d at 1297 n.1 ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotations and citations omitted).

Nevertheless, upon consideration of the record as a whole, the court finds that there is substantial evidence to support the ALJ's conclusion that plaintiff's mental impairments were not severe. Plaintiff asserts that the ALJ improperly concluded that his mental impairments were non-severe, citing Dr. Violich's comment in her August 11, 2002 report that he would be absent from work more than four days per month "due to psychological factors more than physical deficits." (AR 440). However, the court finds no error in the ALJ's conclusion that the lack of a mental health referral by plaintiff's treating physician suggested that she found plaintiff's condition severe enough to warrant such treatment. (AR 31). *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences 'logically flowing from the evidence.'") (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Moreover, the ALJ considered several psychiatric evaluations by Drs. Maloof, Sayad and Azevedo. The court finds no error in his conclusion that each of those reports indicate only mild impact upon plaintiff's ability to work. (AR 340-41, 342-46, 357-61). Plaintiff argues that

1 Dr. Maloof's 1998 opinion indicates that he is moderately impaired because the report shows
2 that plaintiff's global functioning is "60." (AR 341). Nevertheless, the ALJ correctly noted that
3 Dr. Maloof concluded that plaintiff is able to understand, remember and carry out one or two-
4 step job instructions; maintain concentration for at least two-hour intervals; understand,
5 remember and carry out an extensive variety of technical or complex job instructions; and may
6 be able to withstand the stress and pressures associated with an eight-hour workday. (AR 29,
7 341). Plaintiff argues that Dr. Maloof's 1998 report cannot be considered substantial evidence
8 because it is outside the adjudicative period in question. However, the report does support the
9 ALJ's finding that there is no longitudinal evidence of consistently severe medical limitations.
10 Moreover, the ALJ correctly noted Dr. Sayad's findings that plaintiff would not be precluded
11 from interacting with co-workers and the public or from performing simple and repetitive tasks,
12 (AR 29, 346). He also correctly observed that Dr. Azevedo found no limitations on plaintiff's
13 ability to understand, remember and carry out short, simple instructions or to interact
14 appropriately with supervisors, co-workers and the public and only mild limitations on
15 plaintiff's ability to understand, remember and carry out detailed instructions, maintain
16 concentration and attention, and respond appropriately to work pressures in a usual work setting
17 and to changes in a routine work setting. (AR 30, 361).

18 Accordingly, the court concludes that substantial evidence supports the ALJ's finding
19 that plaintiff had no consistently severe mental impairments. Plaintiff's motion as to this issue
20 is denied, and defendant's motion as to this issue is granted.

### IV. ORDER

22 Based on the foregoing, IT IS ORDERED THAT:

23 1. Plaintiff's motion for summary judgment is GRANTED IN PART AND
24 DENIED IN PART;

25 2. Defendant's cross-motion for summary judgment is GRANTED IN PART AND
26 DENIED IN PART;

27 3. The matter is REMANDED for further proceedings consistent with this opinion;
28 and

11

1  4. The Clerk of the Court shall close the file.

2  Dated: April 11, 2007

4  _____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:05-cv-3040 Notice will be electronically mailed to:**

James Hunt Miller jim_miller0@yahoo.com, jim_miller0@yahoo.com

Mary Patricia Parnow mary.parnow@ssa.gov

Angelina Valle angelina@valle-law.com, ralph@valle-law.com

Sara Winslow sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.